# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Jerry Gilliam,

                Plaintiff,       Case No. 15-cv-11833

                                      Hon. Judith E. Levy

v.                               Mag. Judge Mona K. Majzoub

William H. Ordiway, Jr., and
Marveilyn Talisic Ordiway,

                Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [11]

*Pro se* plaintiff Jerry Gilliam filed a second amended complaint on June 26, 2015, alleging "invasion of privacy, intentional infliction of emotional distress and out[r]ageous conduct inflicting extreme emotional distress," caused by defendants William H. Ordiway, Jr. and Marvielyn Talisic Ordiway (incorrectly spelled Marveilyn in the caption and throughout the complaint). (Dkt. 7.) Plaintiff invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332, alleging that he is a citizen of Missouri, defendants are residents of Michigan, and damages

exceed $75,000. (*Id.* at 3.) Defendants also appear *pro se* in this action. Defendants filed an answer and motion to dismiss on July 21, 2015, (Dkt. 11), which is the subject of this opinion and order.[1]  For the reasons set forth below, the motion is denied.

## I.  Background

Plaintiff alleges generally that from January 2014 through August 2014, defendants "made numerous communications to plaintiff and plaintiff's family members through telephone and internet services that included demands for money, accusations of crimes, [and] threats of arrest and imprisonment of plaintiff." (Dkt. 7 at 3.)  Plaintiff claims that defendants' actions caused him "physical symptoms including rapid heartbeat, dizziness, unsteadiness, fainting, palpitating heartbeat, irregular heartbeat, night sweats, insomnia and nightmares." (*Id.* at 10.)

---

[1] Defendants cannot file both an answer and motion to dismiss.  *See generally* Fed. R. Civ. P. 12(b) ("A motion asserting a[ failure to state a claim on which relief can be granted] must be made before pleading if a responsive pleading is allowed."). Because defendants are acting *pro se*, the document will be considered a motion to dismiss and not as an answer, and defendants will have fourteen days after notice of this opinion and order to file an answer to plaintiff's second amended complaint. *See* Fed. R. Civ. P. 12(a)(4)(A) ("[S]erving a motion under this rule alters these periods as follows: . . . if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action[] . . . .").

According to plaintiff, "defendant Ordiway" (it is unclear to which Ordiway plaintiff refers) made the first demand for $100,000 on January 5, 2014, "resulting in plaintiff suffering emotional distress." (*Id.*)  Plaintiff claims that defendants attempted to "extort" this money from plaintiff "to cover hospital medical bills for [defendants'] adopted (sponsored) son, when [p]laintiff was not legally bound in any manner to pay such medical bills." (*Id.* at 7-8.)  Plaintiff alleges that defendant William Ordiway filed suit in Michigan state court "for [p]laintiff Gilliam to pay child support—motion and/or medical bill payments for $100,000.00 dollars—which the state court denied." (*Id.* at 9.) According to plaintiff, these alleged demands caused him "numerous panic attacks, insomnia and overall extreme emotion distress for several months and continued until defendants ceased and desisted on or about August 2014." (*Id.*)

Plaintiff also alleges that defendants "committed invasion of privacy by communicating with [p]laintiff's family members concerning allegations, unsupported by relevant facts, of crimes committed in the Philippine Islands," specifically "accusing plaintiff of crimes of rape, bigamy and tax evasion." (*Id.* at 4.)  According to plaintiff, defendants

committed "egregious misconduct" by attempting "to convince [p]laintiff's family of [p]laintiff's lack of morals and [to] portray plaintiff as a 'criminal.'" (*Id.*)

The alleged misconduct included sending "emails to plaintiff's family members" in an attempt "to damage plaintiff's reputation and character and standing with his family." (*Id.* at 5.) Defendants allegedly "knew that plaintiff had made great efforts to locate his missing [seven]-year[-]old daughter," and "provided the[] allegations of crimes and arrest to plaintiff's family members with the intention to harm plaintiff and harm plaintiff's ability to get his ex-wife into a court of law." (*Id.*) Defendants allegedly "knew or reasonably should have known [that] to invade plaintiff's privacy by sharing the bogus allegations of crimes and pending felony warrant with plaintiff's family would cause harm to plaintiff and result in . . . emotional distress," especially given that defendants were "fully aware of plaintiff's mental health disorders." (*Id.* at 5-6.)

According to plaintiff, this "dissemination of . . . false allegations . . . interfered with plaintiff obtaining custody and visitation rights to his [seven]-year[-]old daughter." (*Id.* at 6.) Plaintiff claims that he has

4

"no such criminal past" because there were "no charges pending" and another incident "was settled." (*Id.*)

Plaintiff brings eight causes of action, which may be distilled as follows. First, plaintiff claims that defendant William Ordiway acted "with malicious intent to harm plaintiff" or "with reckless disregard towards the probability of causing emotional distress" by emailing plaintiff and plaintiff's family, and that his actions were the "actual and proximate cause" of plaintiff's emotional distress. (*Id.* at 11-12.) Second, he alleges that defendant William Ordiway committed intentional infliction of emotional distress by knowingly or unreasonably interfering with plaintiff's custody and visitation order and his ability to bring his ex-wife into court. (*Id.* at 14.) Third, defendant William Ordiway allegedly violated a duty of care owed to plaintiff "by disseminating allegations of crimes and immoral conduct to plaintiff's family[,] accusing plaintiff of rape, bigamy and tax evasion, all of which is false," which caused plaintiff emotional distress. (*Id.* at 15-16.) Plaintiff brings separate causes of action against defendant Marvielyn Ordiway with the same general allegations, but for "aiding and abetting her husband." (*See id.* at 12-16.)

5

In their motion, defendants argue generally that plaintiff "has no evidence to support his claims due to the fact there is none." (*See* Dkt. 11 at 3.)   Defendants challenge plaintiff to "provide proof" of his allegations.   (*Id.* at 5-6.)   According to defendants, there "were never ANY demands for money," and "the ONLY email that was sent to [p]laintiff with regards to any money was sent on 03/04/2014," which "only explain[ed] what happen[ed] and request[ed] [p]laintiff['s] contact info[rmation]." (*Id.* at 4.)   Rather than attaching the email, defendants write that the email provided as follows:

> [Subject:] "Sorry that you['re] invol[ve]d" . . . . Jerry, Clint was attacked by a wild dog and had to be rushed down to Saginaw for plastic surgery[. He']s ok but the problem is that the hospital called me and advised me that my medica[i]d has been cancelled and [] when they found out he is not a US Citizen I had to produce all the visa papers. Now they are requ[e]sting that I give them all your info as to where you live and contact info. Jerry [I']m really sorry as the bill is over $100,000.00 and they told me that you['re] going to be responsible as you should [have] made sure he got his US Citizenship because you w[]ere the spons[o]r. Clint will need a few more plastic surger[ies] that will be over $100,000.00.   Jerry [I']m sorry that you had to be dragged into this.   Please email me back your current address and phone number.

(*Id.*)

According to defendants, "the only family member [] defendants contacted was [plaintiff's] sister," in an effort to get her to testify on defendants' behalf after plaintiff filed his first complaint against them. (*Id.* at 5.) Defendants believe that plaintiff "is only using this court system to harass [d]efendants," alleging that plaintiff previously reported defendants for welfare fraud, contacted a local building department for permit violations, and "contacted ICE" and "the Detroit Field Office regarding [f]raud" to "try to get [d]efendant Marvielyn and son Clint deported." (*Id.* at 5-6.) Finally, defendants note that plaintiff filed a complaint "against his brother, sisters and ex-wife" in the U.S. District Court for the Eastern District of California, in which plaintiff made claims based on similar allegations of interference with custodial and visitation rights. (*Id.* at 6.)[2]

## II.   Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a

---

[2] The California case cited by defendants was closed on June 1, 2015. *See Gilliam v. Gilliam et al.,* No. 14-cv-02454 (E.D. Cal. June 1, 2015). The court dismissed plaintiff's complaint without leave to amend. *See id.*

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted).

## III.  Analysis

Plaintiff claims that defendants committed intentional infliction of emotional distress by outrageous conduct, including by violating his right to privacy, interfering with his custodial and visitation rights, and falsely accusing him of rape, bigamy, and tax evasion. Plaintiff's claims are inartfully pled, but his complaint is subject to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Even still, a *pro se* complaint

8

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court will thus look at the alleged facts to determine whether plaintiff has pled plausible claims, regardless of whether they are correctly styled.

### a. Plaintiff sufficiently pled a claim of defamation.

Under Michigan law, the elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication. *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005).[3] "[A]n accusation of the commission of a crime is defamatory *per se*, meaning that special harm need not be proved." *Kevorkian v. AMA*, 602 N.W.2d 233, 237 (Mich. Ct. App. 1999); *see also Burden v. Elias Bros. Big Boy Restaurants*, 613 N.W.2d 378, 382 (Mich. Ct. App. 2000) ("[W]here a plaintiff brings an action alleging words imputing lack of

---

[3] There is a one-year limitations period for defamation under Michigan law, which is not an issue in this case. *See* Mich. Comp. Laws § 600.5805(1), (9).

chastity or commission of a crime . . . , the inability to prove damages is not fatal to the claim"). Because plaintiff is not a public figure, actual malice—that is, knowledge of falsity or reckless disregard for the truth—need not be shown. *See Kevorkian*, 602 N.W.2d at 237-38. Rather, the proper standard is negligence. *See Mitan*, 706 N.W.2d at 421.

Plaintiff has sufficiently pled a plausible claim of defamation *per se*. Plaintiff claims that defendants emailed his family members—publication to third parties—falsely accusing him of rape, bigamy, and tax evasion—a false and defamatory statement concerning plaintiff that is actionable irrespective of special harm. And plaintiff alleges that defendants did so for the purpose of interfering with his custodial and visitation rights, in part because defendants knew plaintiff's ex-wife personally, (Dkt. 4), which may amount to at least a negligent disregard for the truth. And although not necessary to establish a claim of defamation *per se*, plaintiff alleges that defendants caused him to suffer "rapid heartbeat, dizziness, unsteadiness, fainting, palpitating heartbeat, irregular heartbeat, night sweats, insomnia and

nightmares."   Plaintiff sufficiently pled every element to establish a claim of defamation *per se*, and the claim may go forward.

### b. Plaintiff sufficiently pled intentional infliction of emotional distress.

Under Michigan law, the elements of intentional infliction of emotional distress ("IIED") are: (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress; (3) that the defendant's actions actually caused emotional distress; and (4) that the emotional distress was severe. *Melson v. Botas*, 863 N.W.2d 674, 674-75 (Mich. 2015) (citing *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. 1999)).   "Sufficient proof must be adduced of intentional infliction and something much more than simply aggravation must be shown to make out a case of emotional distress."   *Bhama v. Bhama*, 425 N.W.2d 733, 736 (Mich. Ct. App. 1988).   This requires plaintiff to show more than "hurt feelings," but "seeking and receiving medical treatment" is not "a condition precedent to satisfying the element of extreme emotional distress."   *See McCahill v. Commercial Union Ins. Co.*, 446 N.W.2d 579, 584 (Mich. 1989).

The Michigan Court of Appeals has permitted an IIED claim to proceed based on allegations of interference with parental rights, noting that it was "unpersuaded that the deliberate destruction of a parent-child relationship can never be recognized as outrageous conduct" under the first element. *See Bhama*, 425 N.W.2d at 736.[4]   Here, plaintiff alleges that defendants deliberately defamed him for the purpose of interfering with his custodial and visitation rights with his daughter. And plaintiff alleges that defendants were aware that he had mental health issues, which may establish that they were "reckless with regard to whether the plaintiff would suffer such distress."

Finally, plaintiff alleges that he suffered "physical symptoms including rapid heartbeat, dizziness, unsteadiness, fainting, palpitating heartbeat, irregular heartbeat, night sweats, insomnia and nightmares," which is sufficient to establish emotional distress. *See,*

---

[4] The domestic-relations exception to diversity jurisdiction does not bar the claims in this case, as the court in California found in plaintiff's prior case against his family.   The "domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992).   The "domestic-relations exception is narrow, and lower federal courts may not broaden its application." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015).   "When analyzing the applicability of the domestic-relations exception, [the Court] must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?" *See id.* at 797.   It is not clear that the answer to that question is "yes" to resolve the IIED claim here, so jurisdiction—at least for now—is proper.

*e.g.*, *McMillin v. Fumich*, 2002 Mich. App. LEXIS 2104, at *17-18 (Mich. Ct. App. Dec. 13, 2002) (physician's letter indicating physical symptoms caused by mental distress and need for anti-depressant sufficient to establish a question of fact as to severe emotional distress); *Haverbush v. Powelson*, 551 N.W.2d 206, 209 (Mich. Ct. App. 1996) ("[E]motional distress 'includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.'") (quoting Restatement (Second) of Torts § 46 cmt. j at 77). Plaintiff sufficiently pled every element to establish a claim of IIED, and the claim may go forward.

## IV.   Conclusion

Plaintiff sufficiently pled claims of defamation and IIED. Defendants' motion to dismiss, (Dkt. 6), is therefore denied. This case will go forward, and plaintiff will be required to prove each element of his claims with sufficient, admissible evidence. Defendants will have an opportunity to refute these claims and to file appropriate motions. Defendants have until Friday, December 11, 2015, to file an answer to plaintiff's second amended complaint. Their answer should address

each allegation and may include any affirmative defenses, if appropriate.

IT IS SO ORDERED.


Dated: November 24, 2015                    s/Judith E. Levy
Ann Arbor, Michigan                         JUDITH E. LEVY
                                            United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 24, 2015.


                                            s/Felicia M. Moses
                                            FELICIA M. MOSES
                                            Case Manager