## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

JERRY GILLIAM,

      *Plaintiff*,                    CASE NO. 15-cv-11833

*v.*                               DISTRICT JUDGE THOMAS LUDINGTON
                               MAGISTRATE JUDGE PATRICIA MORRIS

WILLIAM H. ORDIWAY, JR., and
MARVEILYN TALISIC ORDIWAY,

      *Defendants*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT (Docs. 72), PROTECTIVE ORDER (Doc. 74), ATTACHMENT (Doc. 80), AND SANCTIONS (Doc. 81)

**I.    Recommendation**

For the reasons set forth below, I recommend that Gilliam's motion for summary judgment (Doc. 72) be **DENIED**, Gilliam's motion for protective order (Doc. 74) be **GRANTED**, Gilliam's motion for attachment (Doc. 80) be **DENIED**, and that Gilliam's motion for sanctions (Doc. 81) be **DENIED**.

**II.    Report**

    **A.    Introduction and Procedural History**

On November 1, 2014, Plaintiff Jerry Gilliam filed a complaint in the United States District Court for the Western District of Missouri, alleging that Defendants William H. Ordiway, Jr., and Marveilyn Talisic Ordiway (collectively, "Defendants") committed the tort of intentional infliction of emotional distress ("IIED") by way of threatening Gilliam and demanding payments of $100,000. (Doc. 1). Gilliam alleges that he is a Missouri

resident, that defendant Marveilyn Ordiway is a citizen of the Philippines, and that defendant William Ordiway is a Michigan resident. (*Id.* at 1-2). He alleges that this matter is properly filed in federal court on the basis of diversity jurisdiction, and that over one million dollars is in controversy. (*Id.* at Civil Cover Sheet). On May 20, 2015, this case was transferred to the United States District Court for the Eastern District of Michigan, and was assigned to District Judge Judith Levy. (Docs. 1, 2, 3).

On May 26, 2015, Gilliam filed an amended complaint. (Doc. 4). On June 24, 2015, Defendants filed an answer to that complaint and a motion to dismiss. (Doc. 6). On June 26, 2015, Gilliam filed a second amended complaint. (Doc. 7). On June 30, 2015, District Judge Levy ruled that Gilliam's second amended complaint superseded both his original complaint and his first amended complaint, thus Defendants' motion to dismiss was moot. (Doc. 8).

On November 24, 2015, District Judge Levy issued an order in which she found that Gilliam's second amended complaint properly raised two distinct claims under Michigan law: a claim for defamation, and a claim for IIED. (Doc. 18 at 9-13).

On February 12, 2016, Magistrate Judge Mona Majzoub recommended that this matter be transferred to the Bay City Court in the Northern Division of the United States District Court for the Eastern District of Michigan. (Doc. 31). That recommendation was adopted by District Judge Levy on March 22, 2016, (Doc. 32), and this matter was transferred to District Judge Thomas Ludington (Doc. 33), who then referred this matter to the undersigned magistrate judge (Doc. 35).

Gilliam then filed a motion for summary judgment (Doc. 37), and Defendants filed two motions for summary judgment of their own (Docs. 39, 40). Gilliam filed a motion to compel discovery (Doc. 49), motion for prejudgment interest (Doc. 54), motion for appointment of counsel (Doc. 58), and motion for protective order (Doc. 66). On October 20, 2016, I recommended that the parties' motions for summary judgment (Docs. 37, 39, 40) be denied. (Doc. 69). On the same date I ordered that one of Gilliam's motions to compel discovery (Doc. 44) be denied, and another (Doc. 45) be granted; I also denied Gilliam's motion to proceed with discovery (Doc. 49), denied his motion for prejudgment (Doc. 54), and granted his motion for protective order (Doc. 66). (Doc. 68). On November 15, 2016, District Judge Ludington adopted my recommendation. (Doc. 75).

On November 2, 2016, Gilliam filed another motion for summary judgment. (Doc. 72). On November 9, 2016, Gilliam moved for a protective order. (Doc. 74). On December 16, 2016, Gilliam filed a motion for attachment of Defendants' properties. (Doc. 80). On January 4, 2017, Gilliam moved for sanctions against Defendants. (Doc. 81).

### B.     Summary Judgment Standard

Summary judgment is appropriate where a party demonstrates that there exists "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S.

317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the nonmoving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. *See* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the nonmoving party cannot simply assert that the other side's evidence lacks credibility. *See Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to

overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *See Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## C.    Gilliam's Motion for Summary Judgment (Doc. 72)

Given that all parties in this case are proceeding *pro se*, it may be helpful to again take stock of precisely what claims Gilliam raises. In her November 24, 2015, opinion and order, District Judge Levy concluded that Gilliam had sufficiently pled a claim for defamation and IIED. (Doc. 18 at 9-13). Therefore, these are the only surviving claims which could be subject to summary judgment.

On October 2, 2016, Gilliam filed a motion for summary judgment (Doc. 72). Gilliam argues in an accompanying (but separately submitted) brief that he has proven that there is no question of material fact left to resolve in this case, because he has adequately

set forth evidence of the Defendants' tortious conduct. (Doc. 71). Gilliam asserts that he has proven his case by submission of emails from Defendants, and that Defendants have confirmed their liability by "refus[ing] . . . to participate in discovery." (*Id*. at 3). Gilliam thus asserts that he has proven that Defendants "accus[ed] plaintiff of crimes of rape, bigamy and tax evasion," and of attempting "to convince Plaintiff's family of Plaintiff's lack of morals and portray plaintiff as a 'criminal' with the intent to inflict extreme emotional distress upon plaintiff." (*Id*. at 3-4). He further argues that the emails prove Defendants "inform[ed] plaintiff he will have to pay One Hundred Thousand Dollars now and One Hundred Thousand Dollars later" to cover the costs incurred by Defendants' son, a juvenile who Gilliam sponsored for immigration purposes. (*Id*. at 4). He also alleges that "[t]he emails clearly show the defendants' intention to have Plaintiff Gilliam pay for the medical bills he was never libel [sic] to pay." (Doc. 72 at 2). He characterizes this as an attempt "to obtain a total of more than $200,000.00 from plaintiff." (*Id*.). Gilliam also calls this as an attempt to "extort large sums of money from Plaintiff." (*Id*. at 3). Gilliam further notes that he had "no legal reason or obligation" to pay such a sum. (*Id*. at 5).

Gilliam accuses defendants of threatening him with "physical harm," and "accused him of crimes he never committed." (Doc. 72 at 3). Gilliam quotes defendants' statements in emails, including statements that he should "turn [himself] in for being married to two wifes [sic]," and marrying an underage girl. (*Id*.). Gilliam also quotes Defendants asserting that he "knocked down the bees [sic] nest so deal with the swarm of bees." (*Id*.). It is unclear which of these statements, if any, Gilliam interprets as threats of violence.

Gilliam asserts that Defendants "threaten[ed] Plaintiff knowing his fragile mental state and disability." (Doc. 72 at 3). Gilliam notes that Defendants asserted they were engaging in a "meeting . . . [in] which your tax returns happen to be the top subject," and suggesting that Gilliam watch out for "fire balls coming your way." (*Id*.). Gilliam also asserts that Defendants stated that they would be in touch with his family, and would share details of Gilliam's "marriage to a minor child," his alleged rape of a minor, and his use of multiple driver's licenses. (*Id*. at 4). Gilliam notes that Defendants have not denied committing these acts. (*Id*.).

Gilliam further accuses Defendants of invading his privacy by "sending numerous emails to Plaintiff's family members accusing Plaintiff of bigamy, rape, tax evasion and threatening arrest and imprisonment by said disparaging Plaintiff's morality and character." (Doc. 72 at 5).

Gilliam argues that summary judgment is appropriate because he has demonstrated that there is no question of material fact that Defendants committed the torts of defamation and IIED. (Doc. 71 at 3). In particular, he points to the exhibits attached to several of his filings, including various emails purportedly sent by Defendants to him, and his sworn affidavits attesting to Defendants' conduct. (*Id*.). Gilliam further argues that Defendants have refused to participate in discovery, and thus have "effectively admitted [to] plaintiff's claims by failing to deny" the same. (*Id*.).

Gilliam also complains in his motion for summary judgment that Defendants have not complied with their discovery obligations. (Doc. 72 at 1). He further complains that Defendants have "refused to provide any sworn admissions as required by rule, and placed

7

their interrogatory answers in a separate document that makes it inadmissible for failure to follow local rule 26.1." (*Id*. at 2). He further asserts that this refusal to participate in discovery is tacit admission to having perpetrated each of the alleged torts. (*Id*. at 6).

Finally, Gilliam asserts that as a result of the Defendants' conduct, he has experienced "extreme emotional distress," along with physical symptoms such as "rapid heartbeat, dizziness, unsteadiness, fainting, palpitating heartbeat, irregular heartbeat, night sweats, insomnia and nightmares." (Doc. 72 at 3).

Gilliam attaches numerous exhibits to his motion, largely in the form of email correspondence between Gilliam and the Defendants, containing various statements which support Gilliam's motion. (Doc. 72 at Ex. A-I).

### 1.  Participation in Discovery

Notably, while Gilliam generally alleges that Defendants have not participated in discovery, he has not filed a renewed motion to compel, despite having done so once prior in this case. (Doc. 44). Gilliam also has not specifically pointed to any interrogatories or requests for production regarding which Defendants have produced insufficient responses. Furthermore, while the Court granted Gilliam's earlier motion to compel, he has not filed a renewed motion to compel, and does not move for sanctions based on Defendants' alleged failure to comply. Defendants for their part vehemently deny this allegation, and assert that they have sent Gilliam "thousands of documents." (Doc. 77 at 2). This being the case, Gilliam has not sought any relief regarding Defendants' alleged failure to participate in discovery, and the Court has no reason to believe that Defendants have continued to shirk their discovery responsibilities. This allegation is also undercut by Defendants' response

to Gilliam's motion for summary judgment, wherein they attach their responses to Gilliam's requests for admission, suggesting that Defendants have been cooperating with discovery. (Doc. 77 at Ex. 2A-2G). The Court thus declines to accept Gilliam's invitation to find that Defendants have admitted to his allegations by failing to comply with discovery obligations.

### 2.   Defamation

Summary judgment is likewise inappropriate at this time on Gilliam's defamation claim. The elements of a defamation claim are "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005).

Gilliam attaches to his motion for summary judgment various emails, purportedly between himself and Defendants, wherein Defendants make reference to Gilliam's alleged acts of bigamy, rape, marrying an underage child, filing improper tax returns, and using multiple driver's licenses. (Doc. 72 at Ex. F-H). These exhibits are obviously insufficient to support Gilliam's claim for defamation, because defamation necessitates that statements be made to a third party. *See Mitan*, 706 N.W.2d at 421. Conversations solely between Gilliam and Defendants cannot state a claim for defamation.

Some of the email conversations between Gilliam and Defendants imply that Defendants spoke to or intended to speak to various third parties, but these vague statements likewise cannot establish that defamation occurred for the purpose of summary

judgment. Defendants' statement that they were attending a "meeting" regarding Gilliam's "tax returns" (Doc. 72 at Ex. G) does not clearly establish that Defendants actually had such a meeting, and does not confirm the content of that conversation, and thus does not establish any of the four elements of defamation for the purpose of summary judgment.

Defendants' statement that they "will be talking with your family about all you've sent to me via email," including a discussion regarding Gilliam's marriage to a minor and his alleged commission of a rape likewise fails to satisfy these criteria on motion for summary judgment, because that email does not confirm whether the conversation actually occurred, nor the content of the conversation, nor any other form of publication necessary to set forth a defamation claim. (*Id*. at Ex. H).

However, while Gilliam has not supplied sufficient proofs to satisfy a defamation claim, Defendants have done some of the work for him. Defendants attach to their response to Gilliam's motion for summary judgment documents which confirm that they spoke with various third parties, including Gilliam's sister Sue Gilliam-Magistrado, regarding Gilliam. (Doc. 77 at Ex. 17A). Defendants also submit what is purportedly their text message conversation with a woman named Linda, wherein Defendants discussed their court battle with Gilliam, though that conversation does not include any discussion of Gilliam's alleged bigamy or other actions of legal and moral turpitude. (*Id*. at 25C). The precise content of Defendants' discussions with third parties regarding Gilliam and his alleged commission of rape, bigamy, and other crimes, remains to be determined, and thus a question of material fact persists rendering summary judgment inappropriate.

I also note that truth is a complete bar to defamation. *See Curtis Pub. Co. v. Butts*, 388 U.S. 130, 151 (1967); *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich. App. 48, 56 (1992). Defendants have submitted various exhibits purporting to demonstrate that Gilliam did in fact commit the crimes of bigamy, rape, and tax evasion, including chat message logs purporting to show Gilliam requesting to perform acts involving pedophilic incest. (Doc. 77 at Ex. 1-26). Notably, Gilliam does not deny the veracity of these chat logs. *See* (Doc. 81 at 6) ("Said 'Sex Chat' exhibit of defendants, to Plaintiff's knowledge was acquired from an isolated incident that occurred years ago in a remote time and place, for investigative purposes unrelated to these proceedings . . . ."). Gilliam denies the validity of proofs that he married certain Filipino women, including a photograph which was purportedly taken at his wedding ceremony, yet in his denial effectively admits that the marriage ceremony occurred. *See* (Doc. 78 at 5) ("This so-called marriage license exhibit, defendants' own Exhibit 4 clearly shows the minister at the marriage ceremony holding a 'blank paper or book.'"). These factual issues regarding whether statements made were true or not is a genuine issue of material fact that precludes summary judgment.

### 3.    IIED

Gilliam is similarly not entitled to summary judgment on the issue of IIED. As stated by District Judge Levy, the elements of an IIED claim are: (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress; (3) that the defendant's actions actually caused emotional distress; and (4)

that the emotional distress was severe. *See Melson v. Botas*, 863 N.W.2d 674, 674-75 (Mich. 2015).

Whether a defendant's actions were sufficiently "extreme and outrageous" to satisfy the first element of an IIED claim is question of fact to be determined by the trier of fact. *See Foley v. City of Walled Lake*, No. 11-CV-11856, 2012 WL 4449433, at *7 (E.D. Mich. Sept. 25, 2012). Liability will not result from "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Mino v. Clio Sch. Dist.*, 255 Mich. App 60, 80 (2003) (citation omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985). Where no reasonable jury could find that alleged conduct met this standard, entry of summary judgment on the IIED claim is appropriate. *See  Sawabini v. Desenberg*, 143 Mich. App. 373, 383 (1985) ("It is initially for the trial judge to decide whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress.").

Gilliam alleges that Defendants made various statements constituting IIED. Some of these alleged statements fall into the category of threats of criminal punishment, wherein Defendants allegedly asserted that Gilliam would incur criminal penalties for acts of bigamy, rape, and tax evasion. (Doc. 72 at 3). Defendants also allegedly told Gilliam that they intended to contact his family with regard to the same allegations of rape and bigamy, including the statement "your family will be proud of you" when told of these alleged

crimes. (*Id*. at 3-4). Finally, Defendants allegedly told Gilliam that he was liable to pay a large monetary sum for treatment of Defendants' minor son's injuries. (*Id*. at 2).

As to Defendants' alleged threats of criminal prosecution, Gilliam has presented evidence suggesting that Defendants engaged in conduct sufficiently outrageous and intolerable that a reasonable jury could find in his favor. While the undersigned was unable to locate a case directly on point factually (*i.e.* a non-employer, non-governmental party in possession of allegedly incriminating documents threatening the possibility of criminal prosecution against another party), courts have concluded that in some contexts an unjustified threat of criminal prosecution can state a claim for IIED. *See West v. King's Dep't Store, Inc.*, 321 N.C. 698, 705 (1988) (finding that, where a store owner knew that plaintiffs were in a compromised state of health, but nevertheless threatened to pursue criminal prosecution in response to what was wrongly perceived as shoplifting, plaintiffs had presented a viable claim for IIED); *see also Nigro v. Pickett*, 11 Misc. 3d 1077(A) (N.Y. Sup. Ct. 2006), modified, 39 A.D. 3d 720 (N.Y. App. Div. 2007) ("[U]nder some circumstances threats of unjustified criminal charges or an employer's abuse of power may rise to the level of outrageousness to sustain a cause of action for intentional infliction of emotional distress . . . the threatened charges must be completely unfounded and baseless."); *Levine v. Gurney*, 149 A.D. 2d 473, 473 (N.Y. App. Div. 1989) (holding that a defendant's "conduct may rise to the level of outrageous conduct if she were guilty of falsely accusing the plaintiff" where the defendant filed an allegedly false police report accusing the plaintiff of leaving the scene of an accident).

As to Defendants' alleged threats to tell Gilliam's family about his allegedly criminal conduct, Gilliam has put forth sufficient facts and allegations that a reasonable jury could find in his favor. The undersigned was unable to locate any published decision wherein a defendant allegedly threatened to expose a plaintiff to his or her family for conduct which might damage the plaintiff's reputation. However, in a somewhat analogous case, the court in *Nance v. M.D. Health Plan, Inc.*, 47 F. Supp. 2d 276, 279 (D. Conn. 1999) determined that an employer's statements, which threatened to expose the plaintiff's non-public status as a homosexual to his fellow employees, was sufficiently outrageous to state a viable claim for IIED. A reasonable jury could thus find that Defendants' conduct in threatening to inform Gilliam's family about his allegedly criminal behavior was sufficiently outrageous to constitute IIED, and this question should be left for the trier of fact to decide.

The third set of statements allegedly made by defendants, *i.e.* that Defendants told Gilliam he was required to pay a large sum of money for the medical treatment of Defendants' son, do not meet the standard of outrageousness necessary for a viable IIED claim. These statements simply do not constitute the sort of wholly intolerable conduct, beyond all bounds of decency, upon which an IIED claim can be based. This is particularly true where Gilliam admits that Defendants pursued their claim for payment through "state family law court in Michigan," apparently under the belief that they were in fact entitled to payments from Gilliam. (Doc. 78 at 6). *See Butt v. DAIIE*, 129 Mich. App 211, 219; (1983) ("An actor is not liable for intentional infliction of emotional distress where he has done no more than insist upon his legal rights in a permissible way, even though he is aware

that such insistence is certain to cause emotional distress."). Furthermore, the email exhibits attached to Gilliam's motion for summary judgment tend to show that Defendants did not intend for Gilliam to "give [them] any money," but instead merely informed Gilliam that their son "had surgery and [the hospital] wanted to know whom [sic] sponsered [sic] him and I told you I said that you where [sic] a co sponser [sic] peroid [sic], and I sent you an email as your friend giving you a heads up." (Doc. 72 at Ex. F). Gilliam thus cannot succeed on his IIED claim with regard to Defendants' alleged request for monetary payments.

While Gilliam has presented a viable claim for IIED regarding Defendants' alleged threats of criminal prosecution, and alleged threats to tell family members, whether these incidents occurred remains a contested question for the trier of fact to determine. Defendants have responded to the motion and challenge the veracity of many of Plaintiff's allegations and they attach various documents and even an e-mail from Plaintiff's sister in addition to other evidence in opposition to Gilliam's motion for summary judgment. (Doc. 77.) Accordingly, Gilliam has not shown that no question of material fact remains. Thus, he is not entitled to summary judgment.

I further note that summary judgment is inappropriate at this time on Gilliam's IIED claim because he has not provided sufficient proof that actually suffered severe emotional distress. While Gilliam has sufficiently pleaded that he suffered these effects to survive a motion to dismiss, he now seeks entry of summary judgment. Defendants question "how could someone that is suffering from all of the above have the ability to file another case as this one" (Doc. 77 at ID 507). Plaintiff has not supported his motion with medical

evidence of diagnoses or symptoms that establish severe emotional distress. Under these circumstances, Gilliam has not established that there is no question of material fact that he suffered emotional distress of a type sufficiently severe to make out a claim for IIED.

### D.  Gilliam's Motion for Qualified Protective Order (Doc. 74)

Gilliam also moves for entry of a qualified protective order. (Doc. 74). Gilliam previously requested entry of a protective order (Doc. 66), which the Court granted (Doc. 68). That order provided that "[i]nsofar as Defendants request Gilliam's mental health records in the discovery process, they may be viewed only by the parties to this action, and are not to be used for any purpose outside of this action." (Doc. 68 at 8). Gilliam now "moves . . . for particulars of a Qualified Protective Order," which would "prohibit[] the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested," would require "destruction of the protected health information . . . at the end of the litigation or proceeding." (Doc. 74 at 1-3). Gilliam clarifies that this additional or expanded protective order would likewise apply to the "mental health files" covered by the Court's prior protective order. (*Id*. at 2).

Under the Health Insurance Portability and Accountability Act (HIPAA), qualified protective orders must: (1) "prohibit the defendants from disclosing the plaintiff's protected information outside the scope of the litigation" and (2) "require the defendants to return or destroy the protected information when the litigation concludes." *Thomas v. 1156729 Ontario, Inc.*, 979 F. Supp. 2d 780, 785 (E.D. Mich. 2013); 45 C.F.R. §164.512€(1)(v)(A) and (B). Accordingly, the Court's protective order needs to be amended to make it a

qualified protective order to add the requirement that any information provided be either returned or destroyed when the instant litigation concludes. Therefore, Gilliam's motion (Doc. 74) should be granted.

### E.        Gilliam's Motion for Attachment (Doc. 80)

Gilliam also moves for attachment of Defendants' properties. (Doc. 80). Gilliam argues that Defendants have transferred and sold property in an attempt to render any judgment reached against them uncollectable. (*Id*. at 2-3). Gilliam asserts that Defendants verbally informed him that they were transferring property in this manner in an attempt to render themselves uncollectable. (*Id*. at *Sworn Affidavit of Plaintiff*, 2).

Prejudgment attachment is neither appropriate nor possible in this case. Federal Rule of Civil Procedure 64(a) provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." This rule "gives federal courts jurisdiction to impose every remedy available under the laws of the state where the court is located to secure satisfaction of a potential judgment." *Bristol Anesthesia Servs., P.C. v. Carilion Clinic Medicare Res.*, LLC, No. 2:15–cv–17, 2016 WL 885089 at *4 (E.D. Tenn. March 8, 2016). Where a party moves for prejudgment attachment, it is appropriate to look to the relevant state statute governing that remedy, if any. *See Nationwide Mut. Ins. Co. v. Whiteford Sys., Inc.*, 787 F. Supp. 766, 768 (S.D. Ohio 1992).

Prejudgment attachment is codified in Michigan law under MCL § 600.4001, which provides in relevant part:

> Upon ex parte application showing that the person against whom a claim is asserted is not subject to the judicial jurisdiction of the state or, after diligent effort, cannot be served with process as required to subject him to the judicial jurisdiction of the state, the circuit court shall have the power by attachment to apply to the satisfaction of the claim due or to become due any interest in things which are subject to the judicial jurisdiction of the state and belonging to the person against whom the claim is asserted . . . . The court may exercise the jurisdiction granted in this section only if action is taken in accordance with rules adopted by the supreme court to protect the parties.

Gilliam does not allege that Defendants are "not subject to the judicial jurisdiction of the state," or that they "cannot be served with process as required to subject [them] to the judicial jurisdiction of the state," thus prejudgment attachment under MCL § 600.4001 is clearly not appropriate. Ironically, the only case law authority cited by Gilliam in favor of his motion confirms that prejudgment attachment under MCL § 600.4001 cannot occur absent these circumstances. *See* (Doc. 80 at *Plaintiff's Brief*, 1) (citing *Vulpina, LLC v. Dzierzawski*, No. CIV.A. 12-15688, 2013 WL 2898246, at *2 (E.D. Mich. June 13, 2013)). *See also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., Local Union No. 540 v. Baretz*, 156 F.3d 1230 (6th Cir. 1998) (describing MCL § 600.4001 as "allowing for prejudgment attachment only in situations in which a party is not subject to jurisdiction or cannot be served with process"). Gilliam's motion for prejudgment attachment (Doc. 80) should thus be denied.

### F.    Gilliam's Motion for Sanctions (Doc. 81)

Finally, Gilliam moves for sanctions against Defendants. (Doc. 81). Gilliam argues that every document submitted by Defendants in this case has been "fundamentally frivolous," that Defendants' filings have been deficient in terms of case citations, organization of discovery documents, production of "counter-affidavits," and

authentication of exhibits, and that Defendants have submitted exhibits with no relevance to the claims in this case, including the "sex chat" mentioned above. (*Id.* at 3-6). He requests monetary sanctions, requests that the Court instruct the parties to follow all applicable rules and procedures, and that the court inform the parties that pleadings not meeting these standards will be struck. (*Id.* at 7-8).

The rules governing proceedings in this Court are designed to ensure that cases are resolved in a fair, expeditious, and predictable manner, and are adjudicated on their merits. Gilliam is quite correct that all defendants, even those proceeding *pro se*, are expected to understand and comply with the Federal Rules of Civil Procedure and other rules attendant to practice before federal courts. *See Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991). Yet "pro se litigants are not held to the standard of practicing attorneys, and their pleadings are to be construed liberally." *Mitchell v. Ypsilanti Police Dep't*, No. 06-11547, 2006 WL 1452189, at *1 (E.D. Mich. May 24, 2006).

This matter is unusual in that both parties are proceeding *pro se*, and is further complicated by barriers of language and perhaps culture; the allegedly tortious conduct perpetrated by Defendants has also given rise to a thoroughly complicated factual record, including the submission of conversations over email, chat room, and text message, marriage records and arrest warrants from the Philippines, and photographs of wedding ceremonies, to name a few. In short, this matter is quite complex enough on the merits, and attempting to identify and redress each violation of the local rules, practice guidelines, or rules of civil procedure (committed on both sides of the "v.") would be an unreasonably arduous task that would distract from the resolution of this matter on the merits. The Court

is well prepared to recommend or order the imposition of sanctions for conduct which negatively impacts the fair and expeditious resolution of this matter, but is disinclined to preside over a battle of between the parties to determine which side can identify a greater number of minor rule violations.

With the above sentiment in mind, Gilliam has identified only one act perpetrated by Defendants which might rise to the level of sanctionable conduct: Gilliam asserts that Defendants have submitted a copy of his "sex chat" not for the purpose of proving any defense or disproving any of Gilliam's claims, but for the sole purpose of smearing Gilliam's good name. (Doc. 81 at 6-7). Assuming that this assertion is true, sanctions might be advisable.

The veracity of Defendants' allegations regarding Gilliam's supposed crimes of bigamy and rape are key to the resolution of his defamation claim. In particular, Defendants allege that Gilliam perpetrated acts of child rape and marriage to an underage Filipino woman. (Doc. 72 at Ex. H) (referencing "your marriage to a minor child," and "the police report on the girl's mother reported that you raped [sic] her doughter [sic] on your last visit to Cebu"). Defendants' presentation of a record wherein Gilliam appears to request acts of pedophilic incest, while highly scandalous, appears to be directed at demonstrating that Gilliam did in fact commit criminal sexual acts in the Philippines, or at a minimum provide some evidence that Gilliam may have pursued such acts. These records, the existence and veracity of which Gilliam does not challenge, therefore provide some evidence tending to support Defendants' argument that their allegedly defamatory statements to others regarding Gilliam were true. As discussed above, a finding that

Defendants' allegedly defamatory statements regarding Gilliam were true would defeat Gilliam's defamation claim. Because the "sex chat" log provided by Defendants is relevant and supports their defense against Gilliam's claims, I cannot find that the exhibit was submitted for an improper purpose, and sanctions consequently should not issue. Gilliam's motion for sanctions (Doc. 81) should be denied.

### G. Conclusion

For the reasons above, I recommend that Gilliam's motion for summary judgment (Doc. 72) be **DENIED**, Gilliam's motion for protective order (Doc. 74) be **GRANTED**, Gilliam's motion for attachment (Doc. 80) be **DENIED**, and that Gilliam's motion for sanctions (Doc. 81) be **DENIED**.

## III. Review

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 27, 2017         S/ PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Jerry Gilliam at 5016 NE 44th Street, Kansas City, MO 64117 and Defendants at 3401 W. Greenwood Rd., Alger, MI 48610.

Date: February 27, 2017         By s/Kristen Castaneda
                                          Case Manager